
FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ MAR 5 2019 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------- X
JEFFERY FELTON,

              Plaintiff,

- against -

LOCAL UNION 804, INTERNATIONAL
BROTHERHOOD OF TEAMSTERS, UNITED
PARCEL SERVICE,

              Defendants.
--------------------------------------------------------------- X

**MEMORANDUM**
**DECISION AND ORDER**

17-CV-2309 (AMD) (RML)

--------------------------------------------------------------- X
JEFFERY FELTON,

              Plaintiff,

- against -

LOCAL UNION 804, INTERNATIONAL
BROTHERHOOD OF TEAMSTERS, EDDIE
VILLALTA, DANNY MONTALVO, KIRK
SHOCKER, JOE FORCELLI, MARK
JOHNSON, JOSHUA S. POMERANZ, UNITED
PARCEL SERVICE, JOHN REINWALD,
KENNETH KLEIN, HECTOR SANCHEZ,
ROBERTO VARGAS, DAN DALY, MATT
HOFFMAN,

              Defendants.
--------------------------------------------------------------- X

**MEMORANDUM**
**DECISION AND ORDER**

17-CV-4803 (AMD) (RML)

**ANN M. DONNELLY,** United States District Judge.

    The plaintiff Jeffery Felton brings this action against Local Union 804 and United Parcel Service ("UPS"),[1] challenging the grievance process for his termination from UPS. Specifically, he brings a hybrid § 301 Labor Management Relations Act ("LMRA")/duty of fair representation

---

[1] In the operative complaint (ECF Nos. 58-1, 59), Local Union 804 and UPS are the only named defendants. In prior versions of the complaint, the plaintiff named other individual defendants.

1

claim, seeks to vacate the arbitration panel's decision under the Federal Arbitration Act, and alleges state law defamation claims. The Union and UPS now move to dismiss the sixth amended complaint for failure to state a claim. For the following reasons, the defendants' motions to dismiss are granted.

## PROCEDURAL HISTORY

On March 23, 2017, the plaintiff filed a complaint in New York State Supreme Court against the Union, UPS, and individuals who had participated in the grievance proceedings, alleging that these defendants had defrauded the plaintiff, breached the governing collective bargaining agreement, and violated numerous state criminal laws and the LMRA. (*Felton v. Local Union 804, International Brotherhood of Teamsters et al*, No. 17–CV–4803 (E.D.N.Y. Aug. 16, 2017) ("*Felton II*"), ECF No. 1.)[2] The defendant removed the action to this Court on August 16, 2017. (*Id.*)

On April 12, 2017, the plaintiff filed a separate complaint *in forma pauperis* in federal court (*Felton v. Local Union 804, International Brotherhood of Teamsters et al*, No. 17–CV–2309 (E.D.N.Y. Apr. 12, 2017) ("*Felton I*"), ECF No. 1), alleging Title VII and LMRA claims, which I dismissed *sua sponte* with leave to amend. (*Felton I*, ECF No. 4.) The plaintiff filed an amended complaint on June 8, 2017; I again dismissed the complaint *sua sponte* with leave to amend. (*Felton I*, ECF Nos. 6, 7.) On July 31, 2017, the plaintiff filed a second amended complaint, and on August 10, 2017, because the plaintiff was proceeding *in forma pauperis*, I screened his complaint and ordered that the summons be served. (*Felton I*, ECF Nos. 11, 12.) On March 29, 2018, I held a pre-motion conference on the defendants' proposed motion to dismiss the second amended complaint; that same day, the plaintiff filed a third amended

---

[2] On January 25, 2017, the Equal Employment Opportunity Commission issued the plaintiff a right to sue letter. (*Felton I*, ECF No. 58-1 at 20.)

2

complaint. (*Felton I*, Mar. 19, 2018 Minute Entry; ECF No. 40.) At the conference, I ordered the plaintiff to file a fourth amended complaint by April 19, 2018 that included the allegations from both *Felton I* and *Felton II*.³ (*Felton I*, Mar. 19, 2018 Minute Entry.) On April 19, 2018, the plaintiff filed his fourth amended complaint, but also asked to amend it. (*Felton I*, ECF No. 41.) I permitted the plaintiff to file a fifth amended complaint by May 18, 2018, which the plaintiff did. (*Felton I*, May 4, 2018 Order; ECF No. 47.) A month later, both UPS and the Union moved to dismiss the fifth amended complaint. (*Felton I*, ECF Nos. 48, 51.) While the motions were pending, the plaintiff moved for leave to file a sixth amended complaint. (*Felton I*, ECF Nos. 58, 59.) The defendants opposed this motion, but I permitted to the plaintiff to file the sixth amended complaint because of his *pro se* status, and allowed the defendants to supplement their motions to dismiss. (Sep. 4, 2018 Order.) On October 19, 2018, the defendants supplemented their motions, and on December 3, 2018, the plaintiff opposed the motions. (ECF Nos. 70–71, 76–78.)

## BACKGROUND*

On September 19, 2005, the plaintiff began working for UPS as a truck driver out of the facility at 10401 Foster Avenue in Brooklyn. (*Felton I*, ECF No. 58-1 ¶ 1.) As a truck driver, he

---

³ On November 2, 2018, I consolidated the two actions because the complaints in the two actions raise common questions of law and fact, and because the interests of judicial economy would be served by consolidation. (Nov. 2, 2018 Order.)

* All facts are taken from the operative complaint and attached exhibits, which include the plaintiff's notice of discharge and portions of the Collective Bargaining Agreement ("CBA"). (*Felton I*, ECF Nos. 58-1, 59.) The Court also considers the entire CBA, the grievance panel decision, and the March 2, 2015 and August 26, 2015 last chance agreements submitted with the Union's motion to dismiss. (ECF Nos. 50-1–50-4, 50-7.) Although at the motion to dismiss stage, a court "is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference," *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002), a court may consider materials not referenced or incorporated in the complaint that the "plaintiff[] had either in [his] possession or had knowledge of," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002), and are "integral to the complaint," meaning that the plaintiff "relies heavily" on them when drafting the complaint. *Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156 (2d Cir. 2006). These documents are referenced in the complaint, and are integral to the plaintiff's claims.

3

belonged to Local Union 804 of the International Brotherhood of Teamsters, and was bound by the Collective Bargaining Agreement ("CBA"). (*Felton I*, ECF No. 58-1 ¶¶ 1–2.)

The complaint alleges that the plaintiff entered into two Last Chance Agreements with UPS on March 2, 2015 and August 26, 2015; the complaint does not describe what events led to these agreements. The March 2, 2015 Last Chance Agreement provided that the plaintiff "was to be discharged . . . on or about February 10th 2015 for his ongoing egregious overall record." (*Id.* ¶ 8; ECF No. 50-3 at 2.) On May 20, 2015, UPS fired the plaintiff for "nothing," according to the plaintiff, but permitted him to return to work on August 26, 2015 after he signed another Last Chance Agreement.[4] (*Felton I*, ECF No. 58-1 ¶ 9.) Both Last Chance Agreements specified that "Methods and Procedures violations [would] be grounds for immediate termination," and that the plaintiff would not have "recourse to the grievance or arbitration procedure, except to the extent that there is a genuine dispute whether [the plaintiff] actually committed a Methods and Procedures Violation." (*Felton I*, ECF Nos. 50-3, 50-4.) The Agreements also stated that the plaintiff had been "fully and fairly represented by the Union" through the grievance and agreement negotiation process. (*Id.*) The plaintiff claims that he was "forced" to enter these agreements, and signed them "under duress." (*Felton I*, ECF No. 58-1 ¶¶ 8–9.) He also alleges that the agreements violate Article 6 of the CBA. (*Id.* ¶¶ 31–33.)

On December 30, 2015, the plaintiff, allegedly at the instruction of his supervisor, Hector Sanchez, parked his UPS truck in front of a UPS building and took the truck keys home. (*Id.* ¶ 6.) On January 4, 2016, UPS fired the plaintiff, because taking "package car keys home . . . is a direct violation of UPS methods and procedures and [the plaintiff's] last chance agreement." (*Felton I*, ECF No. 59 at 5.) The plaintiff claims that he "had never been notified of such a rule"

---

[4] UPS also fired the plaintiff on April 20, 2015. (*Id.* ¶ 8.)

4

prohibiting employees from taking the keys to their trucks home or parking in front of the UPS facility. (*Felton I*, ECF No. 58-1 ¶ 10.) According to the plaintiff, both were "common practice[s] at UPS," and his supervisor specifically told him to do so. (*Id.* ¶¶ 8, 10.)

On January 12, 2016, the Union submitted the grievance to arbitration against UPS challenging whether UPS had just cause to fire the plaintiff, and whether UPS violated the CBA by not allowing him keep working before the hearing or while the grievance process was resolved.[5] (*Id.* ¶ 13.) Beginning in early July 2016, the Union, primarily through Joe Forcelli, the plaintiff's Union representative, worked with the plaintiff to prepare for the arbitration hearing. (*Id.* ¶¶ 14, 16.) The plaintiff gave Mr. Forcelli "audio recordings, transcripts, documents, and questions" that he thought would help his case, and also offered his comments on the Union's opening statement. (*Id.* ¶¶ 16, 27.)

On September 27, 2016, the parties arbitrated the grievance before a panel of Union and UPS representatives.[6] (*Id.* ¶ 22.) According to the plaintiff, he had numerous conversations with the Union representatives on the panel in which they allegedly "acknowledged that Hector Sanchez . . . lied," and reassured the plaintiff that they were on his side. (*Id.* ¶ 29.) The plaintiff claims that Mr. Forcelli did not make the opening statement that the plaintiff wanted, or ask the questions that the plaintiff had proposed. (*Id.* ¶¶ 27, 36.) In addition, the plaintiff claims that UPS, represented by Dan Daly, submitted evidence that was not truthful. Robert Vargas, a UPS supervisor, testified that the plaintiff continued to park his truck outside despite Mr. Vargas' direction, on three separate occasions, that the plaintiff is not to do so. (*Id.* ¶¶ 18–19.) The

---

[5] The plaintiff claims that on January 5, 2016, he submitted a grievance to the Union that was never processed. (*Felton I*, ECF No. 58-1 ¶ 34.)

[6] The panel members were Matt Hoffman, Thompson, and Bringe from UPS and Eddie Villalta, Danny Montalvo, and Kirk Shocker from Local 804. (*Felton I*, ECF No. 50-7.)

plaintiff claims that he has never spoken to Mr. Vargas about parking his truck outside. (*Id.* ¶ 15.) Mr. Sanchez testified that on December 30, 2015, he told the plaintiff to "leave the package car keys" at work, but that the plaintiff took them home. (*Id.* ¶ 6.) According to the plaintiff, in January of 2016, Mr. Sanchez said that he had "never discussed [the] package car keys" with the plaintiff. (*Id.*) The plaintiff also claims that Mr. Forcelli and the Union did not present the recordings and transcripts that "would have exonerated [the plaintiff]." (*Id.* ¶ 28.) After both sides had presented their cases, the panel upheld the plaintiff's discharge. (*Id.* ¶ 35.)

The plaintiff asks to be reinstated as a UPS truck driver, and that the Last Chance Agreements be removed from his UPS employment file. (*Id.* at 18.) The plaintiff also seeks his wages that he would have earned since he was wrongfully terminated, totaling to approximately $55,000, and punitive damages. (*Id.*)

## LEGAL STANDARD

The plaintiff is proceeding *pro se*, so his pleadings must be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *accord Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Still, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Similarly, a complaint fails to state a claim "if it

tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## DISCUSSION

The plaintiff, in his sixth amended complaint, brings a hybrid § 301 LMRA/duty of fair representation claim, a claim to vacate the arbitration award under the Federal Arbitration Act ("FAA"), and state defamation claims. For the reasons that follow, the plaintiff's hybrid § 301 LMRA and FAA claims are dismissed, and the Court declines to exercise supplemental jurisdiction over the remaining state claims.

### I. Federal Claims

#### A. *Hybrid § 301 LMRA/Duty of Fair Representation Claim*

"To establish a hybrid § 301/DFR claim, a plaintiff must prove both (1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation vis-a-vis the union members." *White v. White Rose Food, a Div. of DiGiorgio Corp.*, 237 F.3d 174, 178 (2d Cir. 2001) (citation omitted). "[A] union breaches the duty of fair representation when its conduct toward a member of the bargaining unit is arbitrary, discriminatory, or in bad faith." *Sanozky v. Int'l Ass'n of Machinists & Aerospace Workers*, 415 F.3d 279, 282 (2d Cir. 2005) (quoting *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44 (1998)). A finding of arbitrary conduct is appropriate only if "the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991). A finding of "bad faith requires a showing of fraudulent, deceitful or dishonest action." *White*, 237 F.3d at 179 (quoting *Sim v. N.Y. Mailers' Union No. 6*, 166 F.3d 465, 472 (2d Cir. 1999)). In addition to establishing arbitrariness or bad faith, a plaintiff must show that such conduct caused his injuries. *Hofmann v. Schiavone Contracting*

7

*Corp.*, 630 F. App'x 36, 39 (2d Cir. 2015) (summary order) (citing *Spellacy v. Airline Pilots Ass'n–Int'l*, 156 F.3d 120, 126 (2d Cir. 1998)). The Court's review of an alleged breach of a union's duty of fair representation is "highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities." *O'Neill*, 499 U.S. at 78. Moreover, "[t]he grievance process cannot be expected to be error-free." *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 571 (1976). "Tactical errors are insufficient to show a breach of the duty of fair representation; even negligence on the union's part does not give rise to a breach." *Barr v. United Parcel Service, Inc.*, 868 F.2d 36, 43 (2d Cir. 1989).

The plaintiff alleges that the Union breached its duty of fair representation because his representative did not argue that UPS breached Articles 7 and 12 of the CBA (*Felton I*, ECF No. 58-1 ¶ 13), did not give the opening that the plaintiff wanted (*id.* ¶ 27), declined to present evidence, including recordings, transcripts, and documents, that would have exonerated him (*id.* ¶¶ 28, 36), did not ask questions that the plaintiff submitted (*id.* ¶¶ 16, 35), did not discuss "past wrongful disciplinary actions by UPS to show . . . a pattern of wrong doings by UPS," and did not cross-examine UPS's witnesses "because no evidence was presented by [the Union]" (*id.* ¶ 25).[7] None of these allegations establish that the Union acted arbitrarily or in bad faith, which is required to plead a breach of duty of fair representation.

The Union's decision not to invoke Articles 7 and 12 of the CBA does not imply bad faith, but rather error or mere negligence. *See Barr*, 868 F.2d at 43 ("[F]ailure to prepare adequately for arbitration does not rise to the level of arbitrariness or bad faith."). Likewise, "a

---

[7] The plaintiff also appears to claim that the Union breached its duty of fair representation because its members on the arbitration panel "agreed with UPS to uphold the Plaintiff's discharge." (*Id.* ¶ 30.) This conclusory allegation is insufficient to sustain a hybrid § 301 LMRA claim. *See Spielmann v. Anchor Motor Freight, Inc.*, 551 F. Supp. 817, 823 (S.D.N.Y. 1982) (Court dismissed hybrid § 301 LMRA claim where the plaintiff alleged that a union member on the arbitration panel was being paid by his former employer, but did not establish that the "union representative had knowledge that the panel was biased or that any of its members were in the employ of [the company].").

8

union attorney's failure to present evidence or witnesses or to prevail at the arbitration are insufficient to form the basis of an unfair representation claim." *Dennis v. Local 804*, No. 07-CV-9754, 2009 WL 1473484, at *5 (S.D.N.Y. May 27, 2009) (citations omitted) (granting motion to dismiss hybrid § 301 LMRA claim where the plaintiff alleged that "the Union's attorney representing him at the arbitration refused to present available evidence in his defense or to call certain witnesses"); *see Martino v. Metro N. Commuter R. Co.*, 582 F. App'x 27, 28–29 (2d Cir. 2014) (summary order) (affirming dismissal of hybrid § 301 LMRA claim where the plaintiff alleged that the union failed to "object to prior disciplinary history," "advance [a] 'crucial' argument," and "present certain witnesses"); *Mussafi v. Fishman*, No. 12–CV–2071, 2012 WL 5473874, at *5 (S.D.N.Y. Nov. 12, 2012) (dismissing hybrid § 301 LMRA claim that the union failed to produce a video recording and call a witness that the plaintiff "assert[ed] would support his account"). In addition, the Union's decision not to discuss "past wrongful disciplinary actions" was a strategic decision that does not evince bad faith or arbitrariness. *See Barr*, 868 F.2d at 43 (finding tactical errors in failing to present witnesses and inadequate representation by union agent were insufficient to demonstrate bad faith or arbitrariness).

The plaintiff's own complaint suggests that the Union acted diligently and in good faith to prepare for the grievance proceeding. The Union met with the plaintiff to discuss the case, permitted the plaintiff to review the proposed opening statement, and listened to and addressed the plaintiff's proposed questions. (*Felton I*, ECF No. 58-1 ¶¶ 14, 16, 27.) Interpreting the plaintiff's complaint liberally, the Union's conduct was negligent at worst. The plaintiff offers nothing more than conclusory allegations that the Union acted arbitrarily and in bad faith; "without specifying supporting facts to show a union's lack of good faith, [the complaint] fail[s]

to state a valid claim." *Hague v. United Paperworkers Int'l Union*, 949 F. Supp. 979, 987 (N.D.N.Y. 1996) (citation omitted).[8] The plaintiff's hybrid § 301 LMRA claim is dismissed.

### B. Vacatur Under the Federal Arbitration Act

The plaintiff's separate claim seeking vacatur of the arbitration award under 9 U.S.C. § 10(a)(1) (*Felton I*, ECF No. 58-1 ¶¶ 20–22) must be also be dismissed. "It is well established that 'an individual employee represented by a union generally does not have standing to challenge an arbitration proceeding to which the union and the employer were the only parties.'" *Velasco v. Beth Israel Med. Ctr.*, 279 F. Supp. 2d 333, 336 (S.D.N.Y. 2003) (quoting *Katir v. Columbia Univ.*, 15 F.3d 23, 24–25 (2d Cir. 1994) (per curiam)); *see Basir v. New Carlton Rehab. & Nursing Ctr.*, No. 13–CV–5726, 2015 WL 5579863, at *4 (E.D.N.Y. Sept. 22, 2015). Under Section 10 of the Federal Arbitration Act, only a "party to the arbitration" has standing to make a motion to vacate. *Choudhary v. U.S. Postal Serv.*, No. 14–CV–4500, 2015 WL 1651076, at *3 (E.D.N.Y. Apr. 14, 2015) (citing *Katir*, 15 F.3d at 24–25 1994) ("If there is no claim that the union breached its duty of fair representation, an individual employee represented by a union generally does not have standing to challenge an arbitration proceeding to which the union and the employer were the only parties."). The plaintiff has not alleged that he was a party to the arbitration between UPS and the Union; thus, he does not have standing to seek vacatur of the arbitration decision under the Federal Arbitration Act.

Even if the plaintiff had the right to bring this action, he has not stated a viable claim to vacate the arbitration award. To warrant vacatur, the plaintiff must overcome "the strong deference appropriately due arbitral awards and the arbitral process." *Scandinavian Reins. Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 72 (2d Cir. 2012) (quoting *Porzig v. Dresdner,*

---

[8] Because the plaintiff has not adequately plead that the Union breached its duty of fair representation, I do not determine whether UPS breached the CBA.

*Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138 (2d Cir. 2007)); *Dolan v. ARC Mech. Corp.*, No. 11–CV–9691, 2012 WL 4928908, at *2 (S.D.N.Y. Oct. 17, 2012) ("The role of a district court in reviewing an arbitral award is 'narrowly limited,' and 'arbitration panel determinations are generally accorded great deference under the FAA.'"). Moreover, as the party moving to vacate the award, the plaintiff bears the burden of proving that grounds for vacatur exist. *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 106 (2d Cir. 2013); *see Morrow v. Jersey Capital Markets Grp., Inc.*, No. 90–CV–5305, 1995 WL 70630, at *2 (S.D.N.Y. Feb. 17, 1995) (citation omitted). The plaintiff has not met this burden.

The plaintiff cites 9 U.S.C. § 10(a)(1), which authorizes a district court to vacate an arbitration award "where the award was procured by corruption, fraud, or undue means." *See N.Y.C. Dist. Council of Carpenters v. Gotham Installations, Inc.*, 13–CV–5659, 2013 WL 5943986 (S.D.N.Y. Oct. 24, 2013) ("Courts look to Section 10(a) of the Federal Arbitration Act ('FAA') for 'guidance in labor arbitration cases.'"). The plaintiff claims the award was procured by fraud because Mr. Vargas and Mr. Sanchez gave perjured testimony, and because the Union submitted falsified documents at the hearing. (*Felton I*, ECF No. 58-1 ¶¶ 6, 15, 18–19.) This, allegation is insufficient to sustain a vacatur claim. *See Dubois v. Macy's Retail Holdings, Inc.*, No. 11–CV–4904, 2012 WL 4060739, at *3 (E.D.N.Y. Aug. 17, 2012), *report and recommendation adopted as modified*, No. 11–CV–4904, 2012 WL 4060586 (E.D.N.Y. Sept. 13, 2012), *aff'd*, 533 F. App'x 40 (2d Cir. 2013) ("[P]laintiff fail[ed] to state a claim of 'fraud' under 9 U.S.C. § 10(a)(1)" where she "allege[d] that the arbitration award was based on perjured testimony or fraudulent documents."). The plaintiff's claim to vacate the arbitration award under 9 U.S.C. § 10(a)(1) is dismissed.

## II. State Claims

"Where a court dismisses all claims over which it has original jurisdiction, it may, in its discretion, decline to exercise supplemental jurisdiction over remaining claims." *Wolfinger v. Consolidated Edison Co. of New York, Inc.*, No. 17–CV–1710, 2018 WL 3637964, at *12 (E.D.N.Y. July 31, 2018) (citing 42 U.S.C. § 1367(c)(3)). In deciding whether to exercise supplemental jurisdiction, district courts should balance the values of judicial economy, convenience, fairness, and comity. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 343 (1988); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."); *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 123 (2d Cir. 2006) ("[F]ederal policy concerns may argue in favor of exercising supplemental jurisdiction even after all original-jurisdiction claims have been dismissed."). Because the federal claims have been dismissed, I decline to exercise supplemental jurisdiction over remaining state claims. *Klein & Co. Futures. Inc. v. Bd, of Trade*, 464 F.3d 255, 262 (2d Cir. 2006) ("[W]here, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims.").

## CONCLUSION

The defendants' motions to dismiss are granted. Nevertheless, a Court dismissing a *pro se* complaint should grant leave to amend freely, if "a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (alterations and quotation marks omitted). I have read the complaint liberally, and find that the plaintiff cannot bring a claim for vacatur under the FAA; the plaintiff's FAA claim is,

therefore, dismissed with prejudice. The same cannot be said about the plaintiff's hybrid § 301 LMRA claim; therefore, I grant the plaintiff leave to amend the complaint as to his hybrid § 301 LMRA claim within 30 days of this Order being entered. If the plaintiff files an amended complaint, the new complaint should be captioned as a "Seventh Amended Complaint," and be filed on docket number 17–CV–2309. Moreover, the new complaint must cure the deficiencies discussed in this opinion and make specific factual allegations as to the Union's arbitrariness and bad faith beyond what the plaintiff has already been pled in his previous complaints. If the plaintiff does not file an amended complaint by 30 days from the date of this order or if he files an amended complaint that does not cure the deficiencies discussed in this Order, this case will be closed. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

**SO ORDERED.**

                                                  s/Ann M. Donnelly
                                                  _____
                                                  Ann M. Donnelly
                                                  United States District Judge

Dated: Brooklyn, New York
       March 5, 2019